# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY JAMES PORTER, | Case No. 1:25-cv-00311-JLT-BAM (PC) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO CONDUCT LIMITED DISCOVERY AS PREMATURE |
| v. | |
| L. YANG, et al., | (ECF No. 18) |
| Defendants. | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| | (ECF No. 1) |
| | **FOURTEEN (14) DAY DEADLINE** |

### I.    Background

Plaintiff Larry James Porter ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.

On November 3, 2025, the Court screened the complaint and found that Plaintiff stated a cognizable claim against Defendant Sergeant Jane Doe for deliberate indifference to medical need and conditions of confinement in violation of the Eighth Amendment and against the California Department of Corrections and Rehabilitation ("CDCR") for violation of the Americans with Disabilities Act, but he failed to state any other cognizable claims for relief against any other defendant. (ECF No. 10.) The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claims identified by the Court. (*Id.*) On January 29, 2026, Plaintiff notified the Court that he does not wish to amend his

1

complaint and is willing to proceed only on his cognizable claims.  (ECF No. 18.)

## II.     Motion for Limited Discovery

In his January 29, 2026 notice, Plaintiff also requests that the Court either (1) order CDCR to provide Defendant Sergeant Jane Doe's name for service; or (2) allow his suit to proceed to discovery to allow him to secure Defendant Sergeant Jane Doe's name so she may be served by the Marshal.  (ECF No. 18.)  The Court construes Plaintiff's request as a motion to conduct limited discovery for the purpose of identifying Defendant Sergeant Jane Doe.

Plaintiff's motion for discovery is premature and is denied without prejudice.  Although the Court has screened Plaintiff's complaint and found that it states cognizable claims against Defendant Sergeant Jane Doe and CDCR, the Court has not yet ordered that this action proceed on those cognizable claims.  If the Court orders that this action proceed on the cognizable claims, then service on Defendant CDCR will proceed and the Court will set a separate deadline for Plaintiff to provide the Court with further information as to the identity and location of Defendant Sergeant Jane Doe.  Further, any discovery request directed at another party, such as CDCR, may be sent after service is ordered and discovery is opened in this case.

Accordingly, Plaintiff's motion to conduct limited discovery, (ECF No. 18), is HEREBY DENIED, without prejudice, as premature.

## III.    Findings and Recommendations

### A.  Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

2

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B.  Plaintiff's Allegations

Plaintiff is currently housed at the Richard J. Donovan Correctional Facility in San Diego, California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at California Substance Abuse Treatment Facility ("SATF").  Plaintiff names as Defendants: (1) L. Yang, correctional officer, (2) Jane Doe, correctional ADA Sergeant, (3) California Department of Corrections and Rehabilitation ("CDCR").  The individual defendants are sued in their individual and official capacities.

Plaintiff alleges deliberate indifference to serious medical needs and health and safety.  Plaintiff also allege violation of the Fourteenth Amendment Equal Protection Clause, violation of the Americans with Disability Act ("ADA") and Cal. Constitution Art. 1, §7(a) equal protection.

Defendant Yang is a correctional officer assigned as Floor Officer #2 in Building #1 in Facility B.  Defendant Yang was responsible for securing and collecting Plaintiff's personal property, separating all durable medical equipment (DME) and supplies consistent with 15 CCR § 3999.392 and the ADA as defined by the *Armstrong* Remedial Plan.  Defendant Jane Doe is a correctional Seargeant assigned to the Restricted Housing Unit (RHU) and the designated ADA compliance Sergeant.  This responsibility is to ensure subordinates and staff comply with established guidelines regarding disability policies and procedures as required by CDCR and the *Clark* and *Armstrong* Remedial Plan.  Defendant Jane Doe was responsible for supervision of subordinate Defendant L. Yang and for the care and control of Plaintiff's safety and health.

The CDCR is legally responsible for its employees' failure to comply with established Plans, and policies that allow prisoners with disability to obtain and keep necessary assistive devices (DMEs and equipment).  This includes tracking and investigating and disciplining employees of CDCR when members of Plaintiff's class are not receiving access to services, programs, activities under the *Armstrong* Remedial Plan and the ADA.  Under Title II of the ADA, CDCR is liable for the vicarious acts of its employees.

The deliberate refusal of Defendants L. Yang and Jane Doe Sergeant to accommodate Plaintiff's disability-related needs such as medical care is a denial of the benefits of the prison's services and programs or activities, from August 17, 2024 - September 3, 2024.  Defendants acted in accordance with CDCR policy with intentionally discrimination against Plaintiff and CDCR failed to correct the discriminatory conduct.

Plaintiff alleges compliance with the Government Tort Claims Act.

Medical Needs and Disability

Plaintiff is a permanently disabled state prisoner in the Disability Placement Program (DPP). Plaintiff's disability is from severe back injuries while performing his assigned duties in Vocational Masonry on July 6, 2021.  Plaintiff has an Orthopedic, Neurological or medical condition that substantially limits his ambulation, walking 100 yards and requires a lower bunk and no stairs.

On January 21, 2024, Plaintiff was afforded disability accommodations, including a cane, walker, disability vest, pressure reducing mattress, incontinence supplies, among other things. Plaintiff suffers from hypertension, dry eyes syndrome causing pain, irritation and vison loss, skin rashes and eczema and incontinent issues.  Plaintiff is prescribed various medications for his conditions.  (ECF No. 1 at 16 of 30.)  Plaintiff requires uninterrupted medical care and management to avoid severe complications.

Events

On August 17, 2024, after an unrelated assault on Plaintiff by an inmate, Plaintiff was reassigned to RHU.  Defendant Yang was contacted and directed to collect and secure Plaintiff's personal property. Plaintiff contends a discriminatory intent and motive existed to deviate from

4

departmental policy.  Defendant Yang was assigned to the same building, and is in allegiance and camaraderie, with a Defendant (O. Rivas) in Plaintiff's previous lawsuit (1:22-cv-105 KES CDB).  There is a culture existing at SATF to discriminate against those with disabilities.  Defendant Yang had prior knowledge of the previous lawsuit.  Other unrelated incidents of hostility and acts of partisanship towards Plaintiff, infers that Yang made a conscious decision to deprive Plaintiff of his DME, medical supplies and medications.

Defendant Yang accessed Plaintiff's DPP disability/accommodation summary through the department's strategic offender management systems (SOMS) prior to securing Plaintiff's personal property. Yang confiscated Plaintiff's property and failed to separate and inventory all of Plaintiff's DME, medical supplies and medication to determine what Plaintiff would be allowed to retain, in violation of CDCR policy

Plaintiff continuously complained he needed his DME, medical supplies and medications but was ignored by staff including Yang.  During an 18-day period, when deprived of his supplies, Plaintiff suffered and had extreme pain, including vomiting, loss of 28 lbs., depression and anxiety and hypertension, among other things.  (ECF No. 1 ¶ 53.)  Defendant Yang was aware, through training provided to employees by the *Armstrong* Remedial Plan to act in accordance with the CDCR policy.

Once in RHU after August 20, 2024, Plaintiff was interviewed by Defendant Jane Doe, ADA Sergeant, compliance Sergeant.  During the interview Plaintiff complained that Defendant Yang deprived Plaintiff of his DME, medical supplies, and mediations on August 17, 2024 and Plaintiff was in pain and other medical conditions he was feeling.  (ECF No. 1 ¶¶ 60-64.)  Defendant Jane Doe dismissed Plaintiff's complaints and said that Plaintiff needed to wait 10 days until he could receive his medications.  She laughed and walked away concluding the interview.

On September 3, 2024, Plaintiff talked again to Defendant Jane Doe and complained to her again that nothing was being done to resolve his issues.  She said "I haven't forgot about you!" and walked away laughing.  She continued to ignore Plaintiff's pleas for help, because he is an old black man. Plaintiff suffered pain and incontinence, not able to get off the bunk for meals

and falling on the ground numerous times and reinjuring his back, and had an increase in blood pressure. She did not summon medical staff to assist Plaintiff. Plaintiff lost 28 pounds in an 18-day period.

Defendant Jane Doe failed to remedy the violations committed by her subordinate Yang and directly participated in the violation by refusing to locate and secure Plaintiff's DME, medical supplies and medications. Defendant Doe's duties as the ADA compliance Sergeant in the RHU required that all DME and medical supplies were provided to Plaintiff. Defendant Jane Doe knew Plaintiff was going to be transferred out of SATF on September 3, 2024 when she told Plaintiff she had not forgotten about him. Plaintiff was sent to North Kern State Prison for an overnight layover. Plaintiff was seen in R&R and Plaintiff complained about not having his DME, medical Supplies and medications. Sister Merlin Alexander contacted the RHU correctional counselor and complained of mistreatment and severity of Plaintiff's hypertension. Plaintiff eventually received his blood pressure medication about 12 days after he was placed in the RHU. Plaintiff got his personal medical property once he arrived at RJD Correctional Facility on Sept. 4, 2024. (ECF No. 1 ¶ 81.) Plaintiff was intentionally discriminated based on ADA status. He was excluded from the feeding program, he was denied his incontinence related services and supplies and had hypertension episodes and extreme weight loss.

Defendant CDCR is the State agency and through its plans and policies must comply with ADA. The *Armstrong* remedial Plan and the Disability Placement Program implement the guidelines to ensure nondiscrimination against inmates with disability. Disability Placement Program applies to all institutions including SATF. Plaintiff contends that Defendants Yang and Doe in their individual capacities acted in accordance with CDCR policy when they intentionally discriminated against Plaintiff on account of his disabilities and CDCR failed to correct the discriminatory conduct. The *Armstrong* Remedial Plan defines categories of disability and issuance of Durable Medical Equipment. Section 3999.392 provides that an inmate transferred from one institution to another shall be allowed their medical equipment and medical supplies.

During the period of August 17, 2024 through September 3, 2024, Plaintiff was denied incontinence-related services and supplies. (ECF No. 1 ¶ 94.) Plaintiff complained to Defendant

6

Seargent Doe who should have provided a remedy.  Both Yang and Doe failed to take Plaintiff's need for his equipment serious and took no alternative steps to at least summon medical staff.

Plaintiff asks for the Court to take judicial notice of the *Armstrong* Remedial Plan, and this case of *Porter v. Rivas*, Case no. 1:22-cv-105 KES CDB.

Plaintiff alleges that based on these facts he states an Equal Protection claim against both Yang and Doe Sergeant and also a state law Equal Protection claim.  Plaintiff alleges that intentional treatment was different for those who were not black and were not elderly.  Plaintiff alleges that he was discriminated against because he is black and elderly and sued defendant's coworker just months earlier.

Plaintiff alleges he was denied adequate food to maintain health when he complained that he could not get off the bunk without dizzy spells, having fainting spells and fell down numerous times trying to get meals. (ECF No. 1 ¶ 117.)  Plaintiff contends he lost 28 pounds in 18 days and was denied access by Defendants to its feeding program, service or activity while housed at RHU during August 17-September 3, 2024.  Defendant Doe Sergeant knew as the ADA coordinator, that an inmate housed in the RHU, being mobility impaired, had a substantial risk of serious harm by being deprived of food and was losing excessive weight in a short period of time.

Plaintiff alleges the following claims: (1) Eighth Amendment violation of deliberate indifference to serious medical needs, (2) Eighth Amendment violation of deliberate indifference to health and safety, (3) Equal Protection under the Fourteenth Amendment, (4) violation of the ADA, (4) Cal. Constitution Art. I, §7(a) equal protection.

Plaintiff seeks compensatory and punitive damages.

### C.  Discussion

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and fails to state a cognizable claim under 42 U.S.C. § 1983, except as noted below.

**Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Plaintiff's complaint is not short.  As explained below, Plaintiff's complaint fails to state a claim.  Many of Plaintiff's allegations are conclusory and do not state what happened, when it happened, or which defendant was involved.  Plaintiff includes legal argument and citations in his complaint, and it is difficult to follow.  Plaintiff's vague and conclusory allegations of medical care provide no factual basis for this Court to draw a reasonable inference which of the named defendants are liable for any misconduct alleged.  A plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Rule 8(a)(2).

**Eleventh Amendment**

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. Of Regents*, 535 U.S. 613, 616 (2002) (citation omitted); *see Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," *Wolfson*, 616 F.3d at 1065–66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, *e.g.*, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Buckwalter v. Nevada Bd. of Medical Examiners*, 678 F.3d 737, 740 n. 1 (9th Cir. 2012).

A state agency is entitled to the same Eleventh Amendment immunity enjoyed by the State when a judgment against the agency "would have had essentially the same practical consequences as a judgment against the State itself." *Lake Country Estates, Inc. v. Tahoe Regional Planning* Agency, 440 U.S. 391, 401 (1979). Accordingly, the California Department of Corrections and Rehabilitation is a state agency, it generally is entitled to Eleventh Amendment immunity from suit for damages.

Plaintiff may not pursue his claims for monetary damages against the named defendants in

8

their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this action for monetary damages against defendants in their individual capacities.

**Supervisory Liability**

Insofar as Plaintiff is attempting to sue Defendant Jane Doe Sergeant, or any other defendant, based solely upon his/her supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

9

589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has not alleged factual support that any supervisor participated in or directed any constitutional violation or that he "implemented a policy so deficient that it was the moving force of any constitutional violation."

**Americans With Disabilities Act**

The Americans with Disabilities Act provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* § 12131(2). The Supreme Court has held that "public entity" includes state prisons.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).  To state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). In addition, "[t]o recover monetary damages under Title II of the ADA ... a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is at least deliberate indifference. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001).

To the extent Plaintiff intends to sue the individual named defendants for violation of his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (a plaintiff cannot sue state officials in their individual capacity under § 1983 to vindicate rights created by Title II of the ADA or Section 504 of the

10

Rehabilitation Act). Instead, the proper defendant in an ADA action is the public entity responsible for the alleged discrimination. *See United States v. Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). In order to recover monetary damages, the plaintiff must allege intentional discrimination under the "deliberate indifference" standard. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (as amended). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon ... the likelihood." Id. at 1139. This standard is not met "where a duty to act may simply have been overlooked," but rather "a failure to act must be a result of conduct that is more than negligent[.]" Id.

Liberally construing the allegations in the complaint, as the Court must at this stage, Plaintiff states a cognizable claim based on his allegation that he was denied access to "food service" by Defendant Sergeant Doe, who Plaintiff told he was unable to attend food service and Defendant Sergeant Doe saw Plaintiff was losing weight from not being able to attend food service. *See, e.g., Orr v. Cal. Highway Patrol*, No. 2:14–585 WBS EFB, 2015 WL 848553 at *16 (E.D. Cal. Feb.26, 2015) ("Public entities are vicariously liable for the acts of their employees under both acts.").

Plaintiff fails to state any other claim.  Plaintiff alleges that he did not get certain medical equipment or medication, but he does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability.  Plaintiff's allegations that he was subjected to any type of discrimination by reason of his disability are conclusory.  Further, any allegations of inadequate medical care do not state a claim under the ADA.  *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), overruled in part on other grounds, *Castro*, 833 F.3d 1060; *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[The ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA does not create a remedy for medical malpractice.").

11

**Eighth Amendment – Deliberate Indifference to Medical Care and Conditions of Confinement**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must

show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

The Eighth Amendment also protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040

Plaintiff states a cognizable claim against Defendant Jane Doe Sergeant for deliberate indifference to medical care, while Plaintiff was in RHU and deliberate indifference to Plaintiff's conditions of confinement regarding Plaintiff's inability to get food and losing 18 lbs.

Plaintiff fails to state a cognizable claim against Defendant Yang. Plaintiff's conclusory allegations that Defendant Yang knew Plaintiff needed his medical supplies and medication is insufficient. The allegations do not demonstrate that, unlike Defendant Jane Doe Sergeant, Yang saw Plaintiff while Plaintiff was housed in RHU and spoke with Plaintiff about Plaintiff's medical needs or food requirements.

**Equal Protection -Fourteenth Amendment and California Constitution**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690,

13

702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

The Court finds that Plaintiff has not stated a cognizable equal protection claim.  "[T]he disabled do not constitute a suspect class" for equal protection purposes. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249). While Plaintiff uses the word "discrimination" in his complaint, Plaintiff has not shown that he was discriminated against because of his membership in any protected class. Nor has Plaintiff shown that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Plaintiff offers that he is elderly and black, but he does not support discrimination on these bases.  Plaintiff's conclusory statements about discrimination do not suffice. Therefore, he has not stated any claim for a violation of his Fourteenth Amendment rights.

Article I, Section 7(a) of the California Constitution, much like the Fourteenth Amendment, provides that a "person may not be deprived of life, liberty, or property without due process of law."  California's Due Process Clause is "identical in scope with the federal due process clause." *Owens v. City of Signal Hill*, 154 Cal.App.3d 123, 127 n. 2, 201 Cal.Rptr. 70 (1984); *Botello v. Morgan Hill Unified Sch. Dist.*, 2009 WL 3918930 (N.D.Cal. Nov. 18, 2009) (treating California Constitution's due process clause as identical to federal Constitutional due process protection for purposes of evaluating a "danger creation" cause of action).

In an extensive and detailed opinion, the California Supreme Court has held that Article 1, Section 7(a) does not create a private right of action for damages. *Katzberg v. Regents of Univ. of California*, 58 P.3d 339, 342-58 (Cal. 2002). Therefore, to the extent Plaintiff is attempting to bring a claim for monetary damages directly under that provision of the California Constitution, his claim fails. *Navarrette v. Wren*, No. 3:22-CV-0006-LL-AHG, 2023 WL 3397382, at *5 (S.D. Cal. May 11, 2023), report and recommendation adopted, No. 22CV006-LL-AHG, 2023 WL

14

8176084 (S.D. Cal. June 1, 2023).

**Violation of Title 15**

Most of Plaintiff's claims are for violation of CDCR policies and procedures.  To the extent that any Defendant has not complied with applicable state statutes or prison regulations, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See*, *e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create a private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).

**Due Process – Deprivation of Property**

Prisoners have a protected interest in their personal property.  *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974).  An authorized, intentional deprivation of property is actionable under the Due Process Clause.  *See Hudson v. Palmer*, 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985).  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

Plaintiff contends that Defendant Yang took his property in violation of remedial orders and CDCR policy.  As Defendant Yang's conduct was an unauthorized deprivation of property,

15

due process is satisfied if there is a meaningful post-deprivation remedy available to Plaintiff. *Id.* Plaintiff has an adequate post-deprivation remedy available under California law. *Barnett v. Centoni,* 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95). Therefore, Plaintiff fails to allege a cognizable due process claim for the alleged deprivation of his property.

**Conspiracy**

It is unclear if Plaintiff is attempting to allege a conspiracy. To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). "[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 930 (9th Cir. 2004) (citation omitted).

Here, Plaintiff's fails to state a claim for conspiracy. Plaintiff has not adequately alleged a meeting of the minds or a deprivation of his constitutional rights. Plaintiff conclusory and speculative allegation the Defendant Yang acted as he did because his colleague was named in a prior lawsuit by Plaintiff is insufficient to support a claim.

***Armstrong* Remedial Plan**

A remedial plan or consent decree does not create a substantive right entitling Plaintiff to sue. Rather, to the extent that plaintiff wishes to pursue an equitable claim based on defendants' violation of the *Armstrong* Remedial Plan, Plaintiff must pursue such claim through the consent decree or class counsel. *Frost v. Symington*, 197 F.3d 348, 358–59 (9th Cir.1999); *Crayton v. Terhune*, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept.17, 2002). If Plaintiff wishes to pursue a damages claim, Plaintiff must allege facts sufficient to support a claim that Defendants violated federal law, not merely that Defendants violated a remedial plan. *See Frost*, 197 F.3d at 353.

**Doe Defendants**

Plaintiff names one doe defendant. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is

16

advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

**IV.    Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendant Jane Doe Sergeant for deliberate indifference to medical need and conditions of confinement in violation of the Eighth Amendment and a claim against CDCR for violation of the Americans with Disabilities Act.  However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendant.

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed March 4, 2025, (ECF No. 1), against Defendant Jane Doe Sergeant for deliberate indifference to medical need and conditions of confinement in violation of the Eighth Amendment and against Defendant CDCR for violation of the Americans with Disabilities Act; and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\*\*\*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter*

17

*v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 4, 2026**                    /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE